SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF BRONX

------------------------------------------------------------------X

LENNY ENCARNACION,

                     Plaintiff,

       -against-

ISABELLA GERIATRIC CENTER, INC.,
EILEEN CASEY, MARIAM PAUL, and
EDWIN SANTIAGO,

                     Defendants.

------------------------------------------------------------------X

Index No.:
Date Purchased:

**VERIFIED COMPLAINT**

      Plaintiff, by her attorneys, **BADER YAKAITIS & NONNENMACHER, LLP**, complaining of the Defendants, respectfully alleges the following:

### NATURE OF THE CASE

    1.    This is an action arising under the laws of the City of New York, the State of New York, Federal Law and rights guaranteed by the United States Constitution as well as Title VII of the Civil Rights Laws of 1964 seeking to redress the personal injuries and economic loss suffered by the plaintiff, LENNY ENCARNACION, as the result of the unlawful discriminatory practices employed by the defendants against her based on gender, race, color and national origin. Plaintiff also seeks damages for wrongful discharge, violation of her Civil Rights, sexual discrimination, sexual harassment, unequal pay, assault, retaliation, breach of contract, negligent hiring, supervision and retention of unfit employees, intentional infliction of emotional distress, and tortious interference with business relationships.

### PARTIES

    2.    Plaintiff is a Hispanic female residing at 2141 Crotona Avenue, Apt. 5B, Bronx, NY

10457.

      3.     Plaintiff is a resident of the State of New York.

      4.     Plaintiff was employed by defendant ISABELLA GERIATRIC CENTER, INC. ("ISABELLA"), from January 2002 until she was terminated in April of 2010.

      5.     At all times hereinafter mentioned, "ISABELLA" was a domestic corporation duly licensed to do business in the State of New York.

      6.     At all times hereinafter mentioned, "ISABELLA" was a foreign corporation duly licensed to do business in the State of New York.

      7.     At all times hereinafter mentioned, "ISABELLA" was a partnership duly licensed to do business in the State of New York.

      8.     "ISABELLA" principal place of business is 515 Audubon Avenue, New York, NY 10040.

      9.     "ISABELLA" maintains a nursing home at 515 Audubon Avenue, New York, NY 10040.

      10.     At all times hereinafter mentioned, EILEEN CASEY was employed by "ISABELLA".

      11.     At all times hereinafter mentioned, EILEEN CASEY worked at the nursing home located at 515 Audubon Avenue, New York, NY 10040.

      12.     At all times hereinafter mentioned, EILEEN CASEY was the Vice President of Human Resources at "ISABELLA".

      13.     At all times hereinafter mentioned, MARIAM PAUL was employed by "ISABELLA".

      14.     At all times hereinafter mentioned, MARIAM PAUL worked at the nursing home located at 515 Audubon Avenue, New York, NY 10040.

      15.     At all times hereinafter mentioned, MARIAM PAUL was the Director of Nursing at

"ISABELLA".

16.     At all times hereinafter mentioned, EDWIN SANTIAGO was employed by

"ISABELLA" and worked at the nursing home located at 515 Audubon Avenue, New York, NY

10040.

FACTS

Mathew Kochuplamo Harassment and Isabella Retaliation

17.     LENNY ENCARNACION began working for "ISABELLA" in January 2002 as a

Nurses' Assistant at the nursing home operated by ISABELLA located at 515 Audubon Avenue,

New York, NY 10040.

18.     In 2003 Mathew Kochuplamo, a coworker of Ms. Encarnacion's, began sexually

harassing and assaulting her.

19.     Upon information and belief, Mathew Kochuplamo is related to MARIAM PAUL,

the Director of Nursing at "ISABELLA".

20.     Upon information and belief, Mathew Kochuplamo is related by marriage to

MARIAM PAUL, the Director of Nursing at "ISABELLA".

21.     On several occasions in 2003 Mathew Kochuplamo grabbed Ms. Encarnacion and

forcibly stuck his tongue in plaintiff's mouth.

22.     On several occasions in 2003 Mathew Kochuplamo forced Ms. Encarnacion onto a

resident's bed while groping her and making lewd sexual comments.

23.     Ms. Encarnacion reported these incidents to EILEEN CASEY.

24.     EILEEN CASEY took no disciplinary action against Mr. Kochuplamo.

25.     Between 2003 and 2005 Mr. Kochuplamo continued to sexually harass Ms.

Encarnacion.

26.     Between 2003 and 2005 Ms. Encarnacion made numerous complains to MARIAM

PAUL, EILEEN CASEY and her union representative about Mr. Kochuplamo's harassment.

27.     Upon receiving these complaints MARIAM PAUL and EILEEN CASEY told Ms.

Encarnacion that they would "look into it" and then would dismissively escort Ms. Encarnacion out

of their office.

28.     No investigation was ever done.

29.     On or about January 2, 2005 Ms. Encarnacion was placed on the same floor as Mr.

Kochuplamo.

30.     On or about January 2, 2005, Mr. Kochuplamo sexually harassed and assaulted Ms.

Encarnacion.

31.     Mr. Kochuplamo threatened Ms. Encarnacion not to tell anyone about the

harassment.

32.     Ms. Encarnacion complained to EILEEN CASEY about Mr. Kochuplamo's most

recent sexual assault.

33.     Mr. Kochuplamo was not disciplined in any way.

34.     Mr. Kochuplamo continued to sexually assault and harass Ms. Encarnacion.

35.     On or about January 15, 2005 Ms. Encarnacion went to the police and got an order

of protection against Mr. Kochoplamo.

36.     On or about January 15, 2005 Ms. Encarnacion told EILEEN CASEY that she had

gone to the police and was getting an order of protection.

37.     Only after the police became involved did EILEEN CASEY and ISABELLA take

any action against Mr. Kochoplamo.

38.    On February 3, 2005 "ISABELLA" informed Ms. Encarnacion that they were terminating Mr. Kochoplamo's employment.

39.    After this incident, EILEEN CASEY, MARIAM PAUL, and "ISABELLA" began a course of retaliatory conduct against Ms. Encarnacion to punish her for filing complaints against Mr. Kochoplamo and for going to the police.

40.    This retaliatory conduct included frequent and unjustified verbal reprimands, confining her to the most difficult assignments, refusing to allow Ms. Encarnacion to use vacation days to accommodate her class schedule, continually assigning Ms. Encarnacion to different floors, having other nurses single her out by checking over every detail of her work, chastising her if she was one minute late back from lunch, refusing to meet with her when she had issues to discuss, making continual inappropriate inquires into her personal life and relationships, and warning that any further complaints against other employees would jeopardize her job.

Retaliatory and Discriminatory Refusal to Allow Ms. Encarnacion to Work under Permit

41.    On or around July 2008 Ms. Encarnacion completed her course work necessary to become a Licensed Practical Nurse (LPN) and earned her LPN permit.

42.    "ISABELLA" allowed nurses of Indian descent to work as LPNs (at a higher salary) after they had earned their permit, but before they passed the state board exam and received their license.

43.    This practice was known as "working under permit."

44.    MARIAM PAUL is of Indian descent.

45.     "ISABELLA" did not allow nurses of non-Indian descent to "work under permit."

46.     "ISABELLA" gave nurses of Indian descent preferential treatment as compared to non-Indian nurses, such as higher pay, getting better assignments, not getting disciplined for misconduct or mistakes, being allowed to speak languages other than English while other nurses are not permitted to speak Spanish, and being given preferential vacations.

47.     As retaliation for Ms. Encarnacion's sexual harassment complaints and as part of a discriminatory policy against nurses not of Indian descent, "ISABELLA", EILEEN CASEY and MARIAM PAUL refused to allow Ms. Encarnacion to work "under permit."

<u>Edwin Santiago's Sexual Harassment/Assault and Isabella's Retaliation<br>in Response to Ms. Encarnacion's Complaints</u>

48.     After receiving her LPN license in or around December 2009, Ms. Encarnacion was called for a meeting with MARIAM PAUL.

49.     During this meeting MARIAM PAUL informed Ms. Encarnacion that, pursuant to the Union's Collective Bargaining Agreement, Ms. Encarnacion would be allowed to work as a LPN.

50.     However, MARIAM PAUL told Ms. Encarnacion that she would be on probation in this new position and that if she "caused trouble" with other employees or made any more complaints about other employees she would be demoted.

51.     In or around December 2009, a coworker of Ms. Encarnacion's, EDWIN SANTIAGO, began sexually harassing and assaulting Mr. Encarnacion.

52.     On several occasions EDWIN SANTIAGO exposed his erect penis to Ms. Encarnacion while making lewd sexual remarks.

FILED Apr 22 2011 Bronx County Clerk

53.     On each of these occasions Ms. Encarnacion told Mr. Santiago that she was horrified by his behavior and that he must stop.

54.     Ms. Encarnacion told Mr. Santiago that she would go to the police if he continued to expose himself.

55.     Despite Ms. Encarnacion's protests, Mr. Santiago continued to approach Ms. Encarnacion while she was alone at work and exposed himself to her.

56.     On one such occasion, Ms. Encarnacion took a picture Mr. Santiago exposing himself, in the hopes that having proof of his behavior would cause him to stop.

57.     Mr. Santiago made a complaint with MARIAM PAUL about Ms. Encarnacion claiming that Ms. Encarnacion was sexually harassing him.

58.     On or around February 5, 2009, EILEEN CASEY had a meeting with Ms. Encarnacion and EDWIN SANTIAGO.

59.     In this meeting, Mr. Santiago claimed that Ms. Encarnacion was telling people that he was sexually harassing her.

60.     Ms. Encarnacion told EILEEN CASEY that Mr. Santiago had exposed himself to her numerous times and that she had a picture to prove this.

61.     Ms. Encarnacion also named three witnesses who had either been sexually harassed themselves by Mr. Santiago or who had witnessed such sexual harassment.

62.     These witnesses were Sirki Sanches, Sandi Malebei, and Gimermina Meja.

63.     Ms. Encarnacion asked EILEEN CASEY to view the picture she had taken as evidence.

64.     EILEEN CASEY refused to look at this picture.

65. Sirki Sanches told EILEEN CASEY that Mr. Santiago showed her a picture of his penis.

66. Ms. Encarnacion went to the police to file a complaint and received a protection order against Mr. Santiago.

67. Mr. Santiago was arrested on the job.

68. EILEEN CASEY asked Encarnacion whether she had something to do with Mr. Santiago's arrest.

69. Ms. Encarncion said that she did, and EILEEN CASEY and MARIAM PAUL looked at each and rolled their eyes.

70. EILEEN CASEY and MARIAM PAUL called Ms. Encarnacion in and informed her that their investigation was concluded and resulted in a "he said/she said" with no concrete evidence in either direction.

71. "ISABELLA" took no disciplinary action against Mr. Santiago.

72. EILEEN CASEY and MARIAM PAUL refused to look at the photo saying "this was not a court of law."

<u>The Retaliatory Termination of Ms. Encarnacion</u>

73. On or about April 25, 2010 Ms. Encarnacion left her jobsite during her break to get food.

74. During this break she got in a car accident.

75. The next day she was terminated.

76. The reason given was that she left the building on break with her narcotics key.

77. This reason was pretextual.

78.   Ms. Encarnacion was terminated as retaliation for complaining and informing the police of Mr. Santiago's sexual harassment and Mr. Kochuplamo's sexual harassment.

79.   A further reason for Ms. Encarnacion's termination was the discriminatory policy at "ISABELLA" of disfavoring nurses not of Indian descent.

80.   It was a common and well known practice for nurses employed by ISABELLA to take their narcotics key with them when leaving the building on a meal break.

81.   "ISABELLA" never informed Ms. Encarnacion that there was a rule prohibiting taking a narcotics key from the building while on a meal break.

82.   Plaintiff has been unable, despite reasonable efforts, to find comparable employment.

### FIRST CAUSE OF ACTION UNDER NEW YORK CITY ADMINISTRATIVE CODE TITLE 8, SECTION 8-107(1)(A) – DISCRIMINATION, UNLAWFUL TERMINATION AND HOSTILE WORK ENVIRONMENT

83.   Plaintiff repeats each and every allegation contained in the preceding paragraphs of this complaint as if fully set forth herein at length.

84.   Prior to the commencement of this action, plaintiff served a copy of this complaint upon the New York City Commission on Human Rights and the Corporation Counsel of the City of New York, in accordance with N.Y.C. Admin. Code § 8-502(c).

85.   New York City Administrative Code Title 8, Section 8-107(1)(a) provides that it shall be unlawful discriminatory practice:

"For an employer or an employee agent thereof because of ... race ... color ... national origin, gender ... alienage or citizenship status ... to discharge from employment such a person or to discriminate against such a person in terms, conditions or privileges of employment."

86.     Each of the individually named defendants engaged in an unlawful and

discriminatory practice in violation of New York City Administrative Code Title 8, Section 8-

107(1)(a) by discriminating against the plaintiff, subjecting her to a hostile work environment,

unlawfully terminating her, and engaging in discriminatory employment actions against the plaintiff

based upon her gender, race, color and national origin.

87.     As a result of the foregoing, plaintiff has been denied employment; has lost wages,

benefits, promotional opportunities, and bonuses; has suffered mental anguish, emotional distress,

damage to her professional reputation and loss of enjoyment of life; and has incurred damages

thereby.

88.     The defendant "ISABELLA" is vicariously responsible for the violation of this

Statute.

### SECOND CAUSE OF ACTION — RETALIATION UNDER NEW YORK CITY ADMINISTRATIVE CODE TITLE 8, SECTION 8-107(7)

89.     Plaintiff repeats each and every allegation contained in the preceding paragraphs of

this complaint as if fully set forth herein at length.

90.     Prior to the commencement of this action, plaintiff served a copy of this complaint

upon the New York City Commission on Human Rights and the Corporation Counsel of the City of

New York, in accordance with N.Y.C. Admin. Code § 8-502(c).

91.     New York City Administrative Code Title 8, Section 8-107(7) provides that it shall

be unlawful discriminatory practice:

"For any person engaged in any activity to which this chapter applies to retaliate or discriminate

in any manner against any person because such person has (i) opposed any practice forbidden under this chapter, (ii) filed a complaint, testified or assisted in any proceeding under this chapter . . . ."

92.      The individually named defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, Section 8-107(1)(a) by retaliating and discriminating against the plaintiff, subjecting her to a hostile work environment and engaging in discriminatory employment actions, including termination, against plaintiff in retaliation for opposing or complaining of discrimination and sexual harassment in the work place.

93.      The defendant "ISABELLA" is vicariously responsible for the violation of this Statute.

### THIRD CAUSE OF ACTION — DISCRIMINATION, UNLAWFUL TERMINATION AND HOSTILE WORK ENVIRONMENT UNDER NEW YORK STATE LAW

94.      Plaintiff repeats each and every allegation contained in the preceding paragraphs of this complaint as if fully set forth herein at length.

95.      By reason of the foregoing, defendants have violated New York Executive Law § 296 et seq.

96.      Defendants' disparate treatment of plaintiff on the basis of her gender, race, color, national original, including plaintiff's termination, retaliation, and creation of a hostile work environment violated the New York State Human Rights Law.

97.      As a result of the foregoing, plaintiff has been denied employment; has lost wages, benefits, promotional opportunities, and bonuses; has suffered mental anguish, emotional distress, damage to her professional reputation and loss of enjoyment of life; and has incurred damages thereby.

98.     The defendant ISABELLA is vicariously responsible for the violation of this Statute.

## FOURTH CAUSE OF ACTION—RETALIATION UNDER NEW YORK STATE LAW

99.     Plaintiff repeats each and every allegation contained in the preceding paragraphs of this complaint as if fully set forth herein at length.

100.    New York Executive Law § 296 (1)(e) provides it shall be an unlawful discriminatory practice: "For any employer, labor organization or employment agency to discharge, expel or otherwise discriminate against any person because he or she has opposed any practices forbidden under this article or because he or she has filed a complaint, testified or assisted in any proceeding under this article."

101.    The individually named defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, Section 8-107(1)(a) by retaliating and discriminating against the plaintiff, subjecting her to a hostile work environment and engaging in discriminatory employment actions, including termination, against plaintiff in retaliation for opposing or complaining of discrimination and sexual harassment in the work place.

102.    The defendant ISABELLA is vicariously responsible for the violation of this Statute.

## FIFTH CAUSE OF ACTION — DISCRIMINATION, UNLAWFUL TERMINATION AND HOSTILE WORK ENVIRONMENT CIVIL RIGHTS ACT SECTION 42 U.S.C. 2000e

103.    Plaintiff repeats each and every allegation contained in the preceding paragraphs of this complaint as if fully set forth herein at length.

104.   The acts and conduct of each of the individually named defendants constitute a violation of 42 U.S.C. 2000e , including plaintiff's termination, retaliation, and creation of a hostile work environment.

105.   Plaintiff has been unable, despite reasonable efforts, to find comparable employment.

106.   As a proximate result of defendants' discrimination of the plaintiff based on her sex, race, color and national origin has suffered and continues to suffer substantial losses, including the loss of past and future earnings, bonuses, deferred compensation, and other employment benefits.

107.   As a further proximate result of defendants' actions, plaintiff has suffered and continues to suffer impairment and damage to plaintiff's good name and reputation.

108.   As a further proximate result of defendants' discrimination, plaintiff has suffered and continues to suffer severe and lasting embarrassment, humiliation and anguish, and other incidental and consequential damages and expenses.

109.   The conduct of the defendants was outrageous and malicious, was intended to injure plaintiff, and was done with reckless indifference to plaintiff's protected civil rights, entitling plaintiff to an award of punitive damages.

### SIXTH CAUSE OF ACTION — RETALIATION UNDER CIVIL RIGHTS ACT SECTION 42 U.S.C. 2000e

110.   Plaintiff repeats each and every allegation contained in the preceding paragraphs of this complaint as if fully set forth herein at length.

111.   The acts and conduct of each of the individually named defendants constitute retaliation under 42 U.S.C. 2000e.

112.    Plaintiff has been unable, despite reasonable efforts, to find comparable employment.

113.    As a proximate result of defendant's retaliation against plaintiff, plaintiff has suffered and continues to suffer substantial losses, including the loss of past and future earnings, bonuses, deferred compensation, and other employment benefits.

114.    As a further proximate result of defendant's actions, plaintiff has suffered and continues to suffer impairment and damage to plaintiff's good name, lasting embarrassment, humiliation and anguish, and other incidental and consequential damages and expenses.

115.    The conduct of defendants was outrageous; was done in a deliberate, callous, malicious, fraudulent and oppressive manner intended to injure plaintiff; was done with an improper and evil motive, amounting to malice and spite; and was done in conscious disregard of plaintiff's rights.

116.    Plaintiff is therefore also entitled to an award of punitive damages.

117.    As a result of the foregoing, plaintiff has been denied employment; has lost wages, benefits, promotional opportunities, and bonuses; has suffered mental anguish, emotional distress, damage to her professional reputation and loss of enjoyment of life; and has incurred damages thereby.

## SEVENTH CAUSE OF ACTION — EQAUL PAY

118.    Plaintiff repeats each and every allegation contained in the preceding paragraphs of this complaint as if fully set forth herein at length.

119.    Defendant's failure to provide plaintiff with pay equal to nurses of Indian descent is

discriminatory and violates the New York City Human Rights Law, New York Executive Law §
296, and 42 U.S.C. 2000e.

120.    As a result of the foregoing, plaintiff has lost wages and benefits and has incurred
damages thereby.

### EIGHTH CAUSE OF ACTION — 42 U.S.C. SECTION 1985

121.    Plaintiff repeats each and every allegation contained in the preceding paragraphs of
this complaint as if fully set forth herein at length.

122.    The acts and conduct of the individually named defendants, as aforesaid, constitute a
violation of 42 U.S.C. Section 1985.

123.    As a result of the foregoing, plaintiff has been denied employment; has lost wages,
benefits, promotional opportunities and bonuses; has suffered mental anguish, emotional distress,
damage to her professional reputation, and loss of enjoyment of life; and has incurred damages
thereby.

### NINTH CAUSE OF ACTION — 42 U.S.C. SECTION 1986

124.    Plaintiff repeats each and every allegation contained in the preceding paragraphs of
this complaint as if fully set forth herein at length.

125.    The acts and conduct of the individually named defendants, as aforesaid, constitute a
violation of 42 U.S.C. Section 1986.

126.    As a result of the foregoing, plaintiff has been denied employment; has lost wages,
benefits, promotional opportunities and bonuses; has suffered mental anguish, emotional distress,
damage to her professional reputation, and loss of enjoyment of life; and has incurred damages

thereby.

## TENTH CAUSE OF ACTION — NEGLIGENT HIRING, SUPERVISION AND/OR RETENTION OF UNFIT EMPLOYEES

127.    Plaintiff repeats each and every allegation contained in the preceding paragraphs of this complaint as if fully set forth herein at length.

128.    Defendant ISABELLA GERIATRIC CENTER, INC., carelessly, negligently and recklessly hired, trained and retained each of the aforementioned employees.

129.    Defendant ISABELLA GERIATRIC CENTER, INC., carelessly, negligently and recklessly failed to retrain each of the aforementioned employees.

130.    Defendant ISABELLA GERIATRIC CENTER, INC., carelessly, negligently and recklessly supervised each of the aforementioned employees.

131.    Defendant's carelessness, negligence and recklessness was a proximate cause of the harm caused to the plaintiff.

## ELEVENTH CAUSE OF ACTION — ASSAULT

132.    Plaintiff repeats each and every allegation contained in the preceding paragraphs of this complaint as if fully set forth herein at length.

133.    As a result of the aforementioned, including but not limited to, the repeated exposure of EDWIN SANTIAGO's penis and Mathew Kochuplamo's repeated sexual assaults, plaintiff has been unreasonably placed in fear of immediate harm to her person, and has incurred damages thereby.

134.    As a result of the foregoing, plaintiff suffered severe mental anguish, humiliation,

embarrassment, and emotional injury.

135.   "ISABELLA", EILEEN CASEY, and MARIAM PAUL are vicarious liable for these assaults.

## TWELTH CAUSE OF ACTION - BATTERY

136.   Plaintiff repeats each and every allegation contained in the preceding paragraphs of this complaint as if fully set forth herein at length.

137.   The aforementioned employees subjected the plaintiff to numerous offensive contacts.

138.   The plaintiff did not consent to these offensive contacts.

## THIRTEENTH CAUSE OF ACTION — INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

139.   Plaintiff repeats each and every allegation contained in the preceding paragraphs of this complaint as if fully set forth herein at length.

140.   As a result of the foregoing egregious conduct, including but not limited to the ongoing sexual assaults and battery of Mathew Kochuplamo's and Edwin Santiago and "ISABELLA" and its employee's refusal to take any steps to stop these sexual assaults, plaintiff has suffered severe emotional distress, and has incurred damages thereby.

## FOURTEENTH CAUSE OF ACTION – BREACH OF CONTRACT

141.   Plaintiff repeats each and every allegation contained in the preceding paragraphs of this complaint as if fully set forth herein at length.

142.   The plaintiff, upon being hired by "ISABELLA", was given an employee manual.

143.   During the course of her employment with "ISABELLS", the plaintiff was a

member of a union.

144.    Prior to hiring the plaintiff, "ISABELLA", entered into a collective bargaining

agreement with a union.

145.    During the course of her employment with "ISABELLA", the plaintiff was covered

by this collective bargaining agreement.

146.    The termination of plaintiff's employment directly violated the provisions

ISABELLA's own employee manual and its Collective Bargaining Agreement in that Ms.

Encarnacion was terminated without cause.

147.    The aforesaid provisions of the employee manual constituted an employment

agreement with plaintiff.

148.    As a result of the defendants' willful discharge of plaintiff in breach of that

employment contract, plaintiff has incurred damages.

<u>FIFTEENTH CAUSE OF ACTION — INTENTIONAL TORTIOUS
INTERFERENCE WITH BUSINESS RELATIONSHIPS AND CONTRACTS</u>

149.    Plaintiff repeats each and every allegation contained in the preceding paragraphs of

this complaint as if fully set forth herein at length.

150.    Subsequent to her wrongful termination defendants, their agents, servants and/or

employees have tortuously interfered with plaintiff's business, contracts and employment

opportunities and prospects.

<u>SIXTEENTH CAUSE OF ACTION - DEFAMATION</u>

151.    Plaintiff repeats each and every allegation contained in the preceding paragraphs of

this complaint as if fully set forth herein at length.

152.    Subsequent to her wrongful termination, defendant through its servants, agents and employees defamed the plaintiff.

153.    Subsequent to her wrongful termination, defendant through its servants, agents and employees wrote things about the plaintiff that were not true.

154.    As a result of the aforementioned the plaintiff has suffered severe emotional distress and economic damages.

<u>SEVENTEENTH CAUSE OF ACTION - SLANDER</u>

155.    Plaintiff repeats each and every allegation contained in the preceding paragraphs of this complaint as if fully set forth herein at length.

156.    Subsequent to her wrongful termination, defendant through its servants, agents and employees slander the plaintiff.

157.    Subsequent to her wrongful termination, defendant through its servants, agents and employees said things about the plaintiff that were not true.

158.    As a result of the aforementioned the plaintiff has suffered severe emotional distress and economic damages.

**WHEREFORE**, plaintiff prays that this Court grant judgment to her containing the following relief:

1.    An award of plaintiff's actual damages in an amount to be determined at trial, but having a present value which exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction in this matter, for loss of wages, benefits, and promotional opportunities, including an award of front pay compensating plaintiff for loss of future salary and benefits;

2.    An award of damages in an amount to be determined at trial to compensate plaintiff for mental anguish, humiliation, embarrassment, and emotional injury;

3.    An award of punitive damages;

4.      An order enjoining defendants from engaging in the wrongful practices alleged herein;

5.      An award of reasonable attorneys' fees and the costs of this action, including attorneys fees for representation before the New York State Unemployment Insurance Appeal Board, and

6.      Such other and further relief as this Court may deem just and proper.

Dated:      New York, New York
            April 18, 2011


                              Yours, etc.


                              JOHN J. NONNENMACHER, ESQ.
                              BADER YAKAITIS & NONNENMACHER, LLP
                              LENNY ENCARNACION
                              Empire State Building
                              350 Fifth Avenue
                              Suite 7210
                              New York, New York 10118
                              (212) 465-1110

# VERIFICATION

STATE OF NEW YORK        )
COUNTY OF NEW YORK    ) ss.:

The undersigned, being an attorney duly admitted to practice in the Courts of the State of New York, affirms under the penalties of perjury; that I am one of the attorneys for the plaintiff in the within action.

That I have read and now the contents of the foregoing SUMMONS AND COMPLAINT and that the same is true to my own knowledge, except as to the matters therein stated to be alleged upon information and belief, and as to those matters I believe it to be true.

This verification is made by affirmant and not by the plaintiff herein because the plaintiff is not within the county where affirmant maintains his office.

This verification is based on information furnished to affirmant by the plaintiff in this action and information contained in affirmant's file.

Dated:  New York, New York
        April 18, 2011

JOHN J. NONNENMACHER