USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12/12/2014

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
                                 :

  LENNY ENCARNACION,               :
                                 :

                  Plaintiff,    :        1:11-cv-3757-GHW
                                 :

        -against-          :    MEMORANDUM OPINION
                                 :      AND ORDER

ISABELLA GERIATRIC CENTER, INC.,  :
ET AL.,                        :

                                 :

                Defendants.  :
-------------------------------------------------------------- X

GREGORY H. WOODS, District Judge:

## I.    INTRODUCTION

      Lenny Encarnacion brings this case against her former employer, claiming discriminatory treatment and discharge, unequal pay, a hostile work environment, and retaliatory treatment and discharge under Title VII, as well as analogous claims under the New York State Human Rights Law ("NYSHRL") and the New York City Human Rights Law ("NYCHRL"). Plaintiff's complaint also includes claims under 42 U.S.C. § 1985 and 1986, and a number of additional state law claims.

      Plaintiff filed this case in New York State Supreme Court on April 18, 2011. *See* Notice of Removal, Dkt. No. 1. Defendants removed the case to federal court on June 2, 2011. *Id.* After nearly three years of desultory litigation, the case was assigned to this Court on April 3, 2014. Defendants moved for summary judgment on October 7, 2014. Dkt. No. 116. Plaintiff filed her opposition to the motion for summary judgment on October 29, 2014, and defendants replied on November 5, 2014. Dkt. Nos. 125, 133. For the reasons outlined below, defendants' motion is granted in part and denied in part.

## II.    BACKGROUND[1]

Defendant Isabella Geriatric Center, Inc. is a senior housing and elderly care facility located in the Washington Heights neighborhood of New York City.  (SUF 1.)  Defendant Eileen Casey is the Vice President of Human Resources at Isabella.  (SUF 4.)  Defendant Mariam Paul is Isabella's Director of Nursing.  (SUF 3.)  Defendant Edwin Santiago was an Environmental Service Worker at Isabella until his voluntary resignation in 2012.  (SUF 5.)  Matthew Kochuplamootil, whose conduct is at issue in some of plaintiff's claims, was employed as a Certified Nurse's Assistant at Isabella from approximately 1995 until his termination in 2005.  (SUF 9, 22.)  Mr. Kochuplamootil is not a party to this case.  Plaintiff Lenny Encarnacion began working as a Certified Nurse's Assistant at Isabella in January 2002.  (SUF 6.)  Ms. Encarnacion is a union employee subject to a collective bargaining agreement through 1199 SEIU United Healthcare Workers East.  (SUF 7.)

In late 2003 or early 2004, Ms. Encarnacion filed a written complaint with Ms. Casey in Isabella's Human Resources office, alleging that Mr. Kochuplamootil had sexually harassed her. (SUF 9, 14).  When Ms. Casey investigated the incident, Mr. Kochuplamootil admitted harassing Ms. Encarnacion.  (SUF 15.)  Ms. Casey gave Mr. Kochuplamootil a verbal warning.  (SUF 16, 17.)  Ms. Casey testified in a deposition that she also told Ms. Paul to keep Mr. Kochuplamootil and Ms. Encarnacion separated during their shifts.  (SUF 20.)  Despite these measures, Mr. Kochuplamootil harassed Ms. Encarnacion again in early 2005.  (SUF 21.)  Ms. Encarnacion filed another complaint with Ms. Casey, and Isabella fired Mr. Kochuplamootil on February 5, 2005.  (SUF 21, 22.)

Ms. Encarnacion claims that Isabella, and in particular Ms. Paul, afforded nurses[2] of Indian descent preferential treatment.  (SUF 25.)  She claims that they alone were allowed to speak their

---

[1] Unless otherwise specified, facts in this section and throughout this opinion are taken from the parties' Statements of Undisputed Facts as filed in accordance with Local Rule 56.1 ("SUF").  Dkt. Nos. 117, 129, 132.

[2] The Court uses the term "nurses" here because the parties use it as a catchall term to refer to Certified Nurse's Assistants, Licensed Practical Nurses, and Registered Nurses.  Use of the general term "nurse" or "nurses" in this

native language at work, that they were given preferential work assignments, and that some were allowed to work as Licensed Practical Nurses before earning their state license—a status the parties refer to as "working on permit." (SUF 25.) Ms. Encarnacion claims that Ms. Paul began mistreating her following the incidents with Mr. Kochuplamootil—"continually assigning [Ms. Encarnacion] to different floors," having "other nurses single [her] out by checking over every detail of her work," and "refusing to meet with [her] when [she] had issues to discuss." Plaintiff's October 2014 Affidavit ("October Affidavit"), Dkt. No. 127-5, at 2.

In July 2008, Ms. Encarnacion completed the coursework necessary to work as a Licensed Practical Nurse ("LPN"). (SUF 30; October Affidavit, Dkt. No. 127-5, at 9.) Shortly thereafter, she verbally asked Ms. Paul if she could work "on permit," that is, be allowed to work as an LPN pending receipt of her state license. (SUF 36.) Ms. Paul denied Ms. Encarnacion's verbal request to work on permit. (SUF 36.) Ms. Encarnacion does not claim, nor does she offer any evidence, that she completed any paperwork, or filed anything in writing—with Isabella or with the state of New York—in conjunction with her request to work on permit. *See* Plaintiff's July 2014 Deposition ("July Deposition"), Dkt. No. 127-2, at 4. In January 2010, having passed the New York state licensing examination and an examination administered by Isabella, as well as completing a period of training, plaintiff began working as an LPN at Isabella. (SUF 42.)

Ms. Encarnacion alleges that sometime in December 2009, Mr. Santiago exposed himself to her while the two were working at Isabella. (SUF 54.) Although she claims to have a photo documenting the incident, Ms. Encarnacion did not immediately report the incident to Isabella's Human Resources Department. (SUF 56, 76.) Mr. Santiago denies that the photo in question is of him. (SUF 65-66.) In early 2010, Mr. Santiago heard that Ms. Encarnacion was telling others at

---

context does not refer to any specific position, but rather is used to refer to the group of healthcare workers at Isabella in nursing-related positions.

Isabella about the alleged incident and accompanying photo, and he met with Ms. Casey to file a complaint against Ms. Encarnacion.  (SUF 69-71.)  On February 5, 2010, Ms. Casey met with Ms. Encarnacion regarding Mr. Santiago's complaint that Ms. Encarnacion was making false statements about him.  (SUF 76.)  Ms. Encarnacion responded, telling Ms. Casey that Mr. Santiago had exposed himself to her in December 2009.  (SUF 76.)  Ms. Encarnacion also filed a criminal complaint against Mr. Santiago, alleging that he had exposed himself to her on multiple occasions.  (SUF 55.)  In response to the criminal complaint, Mr. Santiago was arrested and ultimately pled guilty to disorderly conduct.  (SUF 79, 86.)

On April 25, 2010, Ms. Encarnacion left Isabella on her lunch break without turning in the key to the narcotics cabinet on her assigned floor.  (SUF 88.)  While away on her break, she was involved in a car accident.  (SUF 89.)  Later that day, Ms. Encarnacion flew to the Dominican Republic because her boyfriend's mother had died.  (SUF 90.)  Isabella fired Ms. Encarnacion on April 26, 2010 for alleged violations of company policy, including leaving the premises with her narcotics key.  (SUF 91.)

## II.    APPLICABLE LEGAL STANDARDS

### a.   Summary Judgment Standard

Defendants are entitled to summary judgment on a claim if they can show that "there is no genuine dispute as to any material fact and that [defendants are] entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)).  A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," while a fact is material if it "might affect the outcome of the suit under governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

To defeat a motion for summary judgment, plaintiff "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,

475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)).  "[M]ere speculation or conjecture as to the true nature of the facts" will not suffice.  *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (citations and internal quotations omitted).  Nor will wholly implausible alleged facts or bald assertions that are unsupported by evidence.  *See Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991); *Argus Inc. v. Eastman Kodak Co.*, 801 F.2d 38, 45 (2d Cir. 1986) (citing *Matsushita*, 475 U.S. at 585-86).  The issue of fact must be genuine—plaintiff "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita,* 475 U.S. at 586.

In determining whether there exists a genuine dispute as to a material fact, the Court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought."  *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (citing *Terry v. Ashcroft,* 336 F.3d 128, 137 (2d Cir. 2003)).  The Court's job is not to "weigh the evidence or resolve issues of fact."  *Lucente v. Int'l Bus. Machines Corp.*, 310 F.3d 243, 254 (2d Cir. 2002).  Rather, the Court must decide whether a rational juror could find in favor of the non-moving party.  *Id.*

### b.  Statutes of Limitations

It is well established that "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges.  Each discrete discriminatory act starts a new clock for filing charges alleging that act."  *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002).  Claims based on discrete acts—*e.g.*, termination, failure to promote, denial of transfer, reduction in pay—are time barred if they took place outside the statute of limitations, "even when undertaken pursuant to a general policy that results in other discrete acts occurring within the limitations period."  *Chin v. Port Auth. of New York & New Jersey*, 685 F.3d 135, 157 (2d Cir. 2012) *cert. denied sub nom. Eng v. Port Auth. of New York & New Jersey*, 133 S. Ct. 1724 (2013) (collecting cases from other circuits).

5

It is also well established that hostile work environment claims are different from claims of discrete discriminatory acts because "[t]heir very nature involves repeated conduct. The unlawful employment practice . . . occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own." *Morgan*, 536 U.S. at 115. Thus, "so long as an act contributing to that hostile environment takes place within the statutory time period," it is appropriate to consider "the entire scope of a hostile work environment claim, including behavior alleged outside the statutory period." *McGullam v. Cedar Graphics, Inc.*, 609 F.3d 70, 75 (2d Cir. 2010) (quoting *Morgan*, 536 U.S. at 105).

Generally, a plaintiff must file an administrative complaint alleging Title VII violations with the EEOC within 180 days of the alleged discriminatory conduct. *See* 42 U.S.C. § 2000e-5(e)(1). However, in a "deferral" state such as New York, in which there is a designated state or local agency with jurisdiction to consider discriminatory employment claims, the limitations period for filing charges with the EEOC is extended to 300 days. *See id*; 29 C.F.R. § 1601.13; *McGullam v. Cedar Graphics, Inc.*, 609 F.3d 70, 75 (2d Cir. 2010). Plaintiff filed her New York State Division of Human Rights ("NYSDHR") complaint on May 27, 2010, thus barring federal claims for discrete acts of discrimination or retaliation that occurred before July 31, 2009 (300 days earlier). Except for claims relating to her termination—a discrete act which occurred *after* July 31, 2009—and those alleging a hostile work environment, all of plaintiff's federal discrimination and retaliation claims are time barred.

Under New York law, plaintiff's NYSHRL and NYCHRL claims are subject to a three-year statute of limitations. N.Y. C.P.L.R. § 214(2); N.Y. City Admin. Code § 8-502(d); *see also Pilgrim v. McGraw-Hill Companies, Inc.*, 599 F. Supp. 2d 462, 474 (S.D.N.Y. 2009) (noting three-year statute of limitations applies to both state and city discrimination claims). Because plaintiff filed this suit on April 18, 2011, claims for conduct that took place prior to April 18, 2008 are time barred. Thus, in

addition to the claims noted above which survive the federal statute of limitations, plaintiff's claims related to her being denied the ability to work as an LPN "on permit" are not time barred under the NYSHRL and NYCHRL.

### c.   Liberal Construction of the NYCHRL

Under the Local Civil Rights Restoration Act of 2005 (the "Restoration Act"), N.Y.C. Local L. No. 85, the New York City Council established two new rules of construction for the NYCHRL: (1) "a 'one-way ratchet,' by which interpretations of state and federal civil rights statutes can serve only 'as a *floor* below which the City's Human Rights law cannot fall'"; and (2) a requirement that the NYCHRL provisions "be construed liberally for the accomplishment of the uniquely broad and remedial purposes thereof, regardless of whether federal or New York State civil and human rights laws, including those laws with provisions comparably-worded to provisions of this title[,] have been so construed." *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013) (quoting Restoration Act §§ 1, 7).  The Second Circuit recently clarified that these amendments to the Restoration Act require subjecting NYCHRL claims to a different standard and analyzing them separately from Title VII and NYSHRL claims.  *See id.*  The NYCHRL must be construed "broadly in favor of discrimination plaintiffs, to the extent that such a construction is reasonably possible." *Id.* (quoting *Albunio v. City of New York,* 16 N.Y.3d 472, 477–78 (2011)).  However the *Mihalik* court also made clear that:

> Summary judgment remains 'an integral part of the Federal Rules of Civil Procedure as a whole, which are designed to secure the just, speedy and inexpensive determination of every action. . . . District courts may still grant summary judgment with respect to NYCHRL claims if there is no genuine dispute as to any material fact . . . .

*Id.* at 111-12 (citing Fed. R. Civ. P. 56(a)).  With these guiding principles in mind, the Court addresses plaintiff's NYCHRL claims separately from her Title VII and NYSHRL claims.

### III.   ANALYSIS

#### a.   Exhaustion Requirements for Title VII Claims

As a preliminary matter, although exhaustion of administrative remedies is "ordinarily an essential element of a Title VII claim," there is an exception for claims that are "reasonably related" to those filed in a complaint with the EEOC or analogous state agency. *Williams v. New York City Hous. Auth.*, 458 F.3d 67, 70 (2d Cir. 2006) (citations omitted).  In determining whether claims are reasonably related, "[t]he central question is whether the complaint filed with the EEOC gave that agency adequate notice to investigate discrimination on both bases." *Id.* (internal quotation marks omitted).  One type of claim that may be considered reasonably related is a claim for which "the conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge that was made" in the initial administrative complaint.[3] *Id.* (citations omitted).  The Second Circuit has characterized this exception to the exhaustion requirement as "essentially an allowance of loose pleading" that is "based on the recognition that EEOC charges frequently are filled out by employees without the benefit of counsel and that their primary purpose is to alert the EEOC to the discrimination that a plaintiff claims he is suffering." *Id.* (citations omitted).

Defendants argue that a number of the claims plaintiff brings in this case are either not included in plaintiff's NYSDHR complaint, Dkt. No. 119-4, at 35, or are not reasonably related to the claims therein.  The Court disagrees.  In her NYSDHR complaint, plaintiff identified defendant Mariam Paul as an individual who discriminated against her. *Id.* at 36.  Plaintiff checked off boxes indicating that she was discriminated against on the basis of sex and disability and that she was

---

[3] As the Second Circuit noted in *Williams*, there are two other types of claims that may be considered reasonably related: "(1) a claim alleging retaliation by an employer against an employee for filing an EEOC charge, and (2) a claim where the plaintiff alleges further incidents of discrimination carried out in precisely the same manner alleged in the EEOC charge."  458 F.3d at 70 n.1 (citations omitted).  No such claims are at issue here.

retaliated against for making accusations of sexual harassment.  *Id.* at 37.  She checked off boxes indicating various acts of discrimination:  termination; harassment or intimidation (other than sexual harassment); being given "different or worse job duties than other workers in [her] same title"; and enduring a hostile work environment.  *Id.* at 38.  She wrote that after she complained about her treatment, "the retaliation never stop[ped]" and that the people treated better than her were "all the people with the same nationality as my Director Ms. Paul (Indian people)."  *Id.* at 42.

Because the Court finds that all of the relevant claims are either included in or reasonably related to these allegations in the NYSDHR complaint, the Court declines to grant summary judgment for defendants on these grounds.

### b.  Discrimination Claims

Title VII makes it an "unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2.  Plaintiff claims that defendants discriminated against her, including wrongfully terminating her employment, on the basis of her gender, race, color, and natural origin.  *See* Complaint ¶ 86, 96, 106, at Dkt. No. 1.

Courts analyze discrimination claims under a burden-shifting framework first outlined by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  Under that framework:

> [P]laintiff first must establish a *prima facie* case of discrimination based on [a protected status]. If [s]he does so, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for the employee's dismissal [or other adverse employment action]. If such a reason is proffered, the burden shifts back to the plaintiff to prove that discrimination was the real reason for the employment action.

*Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000) (internal citations omitted).  To make out a *prima facie* case of discrimination, plaintiff must show that:  (1) she belongs to a protected group; (2) she was qualified for her position; (3) her employer took an adverse action against her; and (4) the

adverse action occurred in circumstances giving rise to an inference of discrimination.  *Kirkland v. Cablevision Sys.*, 760 F.3d 223, 225 (2d Cir. 2014); *see also Graham*, 230 F.3d at 38 (in the context of alleged discriminatory discharge, the second prong requires plaintiff to show she was "performing her duties satisfactorily").

Plaintiff may raise such an inference of discrimination by "showing that the employer subjected [her] to disparate treatment, that is, treated [her] less favorably than a similarly situated employee outside [her] protected group." *Graham*, 230 F.3d at 39.  In doing so, she must show that she was "'similarly situated in all material respects' to the individuals with whom she seeks to compare herself." *Id.* (quoting *Shumway v. United Parcel Service, Inc.*, 118 F.3d 60, 64 (2d Cir. 1997)). This showing "must be judged based on (1) whether the plaintiff and those [s]he maintains were similarly situated were subject to the same workplace standards and (2) whether the conduct for which the employer imposed discipline was of comparable seriousness." *Id.* at 40 (citing *Norville v. Staten Island Univ. Hosp.*, 196 F.3d 89, 96 (2d Cir. 1999)).  Plaintiff need not show that her situation was *identical* to that of someone outside her protected group who was not disciplined as severely, but she must demonstrate a "reasonably close resemblance of the facts and circumstances of plaintiff's and comparator's cases." *Id.*

### i.  *Alleged Wrongful Termination*

Plaintiff's allegedly wrongful termination is the only claim at issue under Title VII because, as described in Section II.b., *supra*, all other discrimination claims are time barred.  Plaintiff fails to make out a *prima facie* case that she was terminated based on her race because she fails to bring *any* evidence that would give rise to an inference of discrimination.  Plaintiff offered evidence that other nurses left the premises with their keys to the narcotics cabinet and were not fired for such conduct. July Deposition, Dkt. No. 127-2, at 10-13.  But she does not claim that those nurses were non-Hispanic and thus outside her protected class, nor does she offer evidence from which a reasonable

juror could conclude that she and those nurses were similarly situated.  Quite simply, plaintiff offers no evidence of any conduct by defendants which would indicate that she was singled out for termination because of her race.  Because there are no facts from which a reasonable juror could find that plaintiff's termination was discriminatory, the Court grants defendants' motion for summary judgment on plaintiff's wrongful termination claim.

Plaintiff also brings discrimination claims under the NYSHRL.  Because courts review such claims under the same standard as Title VII discrimination claims, *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007), the Court grants defendants' motion for summary judgment on plaintiff's NYSHRL wrongful termination claim without separately addressing it on the merits.

The discrimination provisions of the NYCHRL are subject to a more liberal construction than the analogous Title VII and NYSHRL provisions.  *See Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013) (NYCHRL is to be construed "broadly in favor of discrimination plaintiffs, to the extent . . . reasonably possible").  Even still, summary judgment on NYCHRL claims is appropriate where "there is no genuine dispute as to any material fact."  *Id.* at 111-12 (quoting Fed. R. Civ. P. 56(a)).  Here plaintiff has failed to make out even a *prima facie* case for discrimination.  Even giving all due consideration to the "uniquely broad and remedial purposes" of the NYCHRL, "[s]tatements that are devoid of any specifics, but replete with conclusions[ ] are insufficient to defeat a properly supported motion for summary judgment."  *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 452 (2d Cir. 1999), *as amended on denial of reh'g* (Dec. 22, 1999).  The Court finds that plaintiff has failed to offer sufficient evidence to raise a genuine dispute of material fact, and grants defendants' motion for summary judgment on plaintiff's NYCHRL claim for discriminatory discharge.

## ii. Working "On Permit"

As noted in Section II.b., *supra*, plaintiff's claim that she suffered discrimination when she was not allowed to work "on permit" is not time barred under the longer statute of limitations for NYSHRL and NYCHRL claims.  In support of this claim, plaintiff has offered the names of nurses of Indian descent whom Isabella allowed to work "on permit," (*See* Response to SUF 35), and has testified that she was not allowed to do so.  July Deposition, Dkt. No. 127-2, at 4-5.  However, plaintiff fails to make out a *prima facie* case of discrimination because she cannot show that she was *qualified* to work on permit.

The New York statute governing the requirements for nurses to work on permit provides:

> A permit to practice as a . . . licensed practical nurse may be issued by the department *upon the filing of an application* for a license as a . . . licensed practical nurse and *submission of such other information as the department* may require to (i) graduates of schools of nursing registered by the department, (ii) graduates of schools of nursing approved in another state, province, or country or (iii) applicants for a license in practical nursing whose preparation is determined by the department to be the equivalent of that required in this state.

N.Y. Educ. Law § 6907 (emphasis added).  Plaintiff—of course—admits that this statute governs the ability of a nurse to work on permit in New York.  (SUF 33.)  Plaintiff also admits that she never applied for such a permit.  July Deposition, Dkt. No. 127-2, at 4.  Although generally courts only consider plaintiff's evidence at the *prima facie* stage, *see Graham*, 230 F.3d at 41-42, the fact that defendants pointed out the existence of this statute does not preclude the Court from recognizing that it governs plaintiff's ability to work on permit.

Because plaintiff cannot show that she was qualified to work on permit, she cannot satisfy the second requirement for a *prima facie* case of discrimination.  As with plaintiff's wrongful termination claim, even giving all due consideration to the "uniquely broad and remedial purposes" of the NYCHRL, *Bickerstaff*, 196 F.3d at 452, the Court finds that plaintiff has failed to offer

sufficient evidence to raise a genuine dispute of material fact, and grants defendants' motion for summary judgment on plaintiff's NYSHRL and NYCHRL claims.

### c.  Retaliation Claims

Retaliation claims are also analyzed through the *McDonnell Douglas* framework, under which the plaintiff first must make out a *prima facie* case of retaliation by showing:  "(1) participation in a protected activity; (2) the defendants' knowledge of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 844 (2d Cir. 2013).  Plaintiff's burden at this stage "has been characterized as minimal and *de minimis*." *Id.* (citations omitted).  As discussed below, plaintiff satisfies the first three prongs required for a *prima facie* case:  her filing of sexual harassment complaints qualifies as protected activity; defendants knew about these complaints because she filed them with Ms. Casey in Isabella's Human Resources office; and plaintiff suffered an adverse employment action when she was fired.

With regard to the fourth prong, plaintiff must show but-for causation, which "requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2533 (2013).  She can make this showing at the *prima facie* stage simply by demonstrating that the protected activity and the adverse employment action were close in time.  *See Zann Kwan*, 737 F.3d at 845 ("[T]he but-for causation standard does not alter the plaintiff's ability to demonstrate causation at the *prima facie* stage on summary judgment . . . indirectly through temporal proximity.").  While this is a fact-specific determination, in similar cases, the Second Circuit has found the two acts sufficiently close when the lapse was between twelve days and eight months.  *See, e.g.*, *Reed v. A.W. Lawrence & Co.*, 95 F.3d 1170, 1178 (2d Cir. 1996) (twelve days); *Zann Kwan*, 737 F.3d at 845 (three weeks); *Richardson v. New York State Dep't of Corr. Serv.*, 180 F.3d 426, 446-47 (2d Cir. 1999) (one

month); *Gorman-Bakos v. Cornell Co-op Extension of Schenectady Cnty.*, 252 F.3d 545, 554 (2d Cir. 2001)

(five months); *Grant v. Bethlehem Steel Corp.,* 622 F.2d 43, 45-46 (2d Cir. 1980) (eight months).

### i. *Alleged Wrongful Termination*

On February 5, 2010, plaintiff reported to Ms. Casey, Vice President of Human Resources at

Isabella, that Mr. Santiago had sexually harassed her. (SUF 75-76.)  On April 25, 2010, plaintiff was

terminated. (SUF 91.)  The time lapse of two and a half months between the protected activity and

adverse employment action—during which time Mr. Santiago was arrested at work in response to

plaintiff's complaint to the police (*See* October Affidavit, Dkt. No. 127-5, at 3.)—is sufficient to

establish but-for cause at the *prima facie* stage.

Because plaintiff has established a *prima facie* case of retaliation, defendants must come

forward with legitimate, nonretaliatory reasons for her termination.  "This burden is one of

production, not persuasion; it can involve no credibility assessment."  *Ricci v. DeStefano*, 530 F.3d 88,

110 (2d Cir. 2008) (quoting *Reeves v. Sanderson Plumbing,* 530 U.S. 133, 142 (2000)).  The Court finds

defendants have met this burden because their evidence, if "taken as true, would permit the

conclusion that there was a nondiscriminatory reason for the adverse action." *Id.*  Plaintiff admits

that on April 25, 2010, she left Isabella on her lunch break without notifying her supervisor,

counting the narcotics under her control, or turning in her key to the narcotics cabinet on her

assigned floor. (SUF 88, 92.)  Defendants have submitted testimony from nursing supervisor

Virgillio Sarmiento that this is a violation of Isabella's policies. (SUF 94.)  They also submitted

testimony from in-service educator Carlos Rances that he trained plaintiff on those policies prior to

her termination. (SUF 97.)  Plaintiff disputes the validity and veracity of both sets of testimony, but

the Court finds that defendants' proffered evidence is sufficient to meet their burden at this stage.

Because defendants have produced evidence of a nonretaliatory reason for terminating

plaintiff, the Court moves on to the third, "pretext stage" of *McDonnell Douglas.*  To defeat summary

14

judgment at this stage, plaintiff can no longer rely on temporal proximity alone, and instead must combine that evidence "with other evidence such as inconsistent employer explanations" for her termination. *Zann Kwan*, 737 F.3d at 847. She may "demonstrate[ ] weaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered legitimate, nonretaliatory reasons for its action[, and] [f]rom such discrepancies, a reasonable juror could conclude that the explanations were a pretext for a prohibited reason." *Id.* at 846.

Here, plaintiff testified that she knew of other nurses who were not fired for leaving the premises without counting narcotics or turning in their keys to the narcotics cabinet. *See* Plaintiff's August 2014 Deposition ("August Deposition"), Dkt. No. 127-4, at 10-13. She also offered testimony from two former Isabella CNAs, Patricia Saulas and Royston Thomas, who said that they had personally witnessed nurses leave with their narcotics keys many times. *See* Saulas Deposition, Dkt. No. 127-9, at 3; Thomas Affidavit, Dkt. No. 127-11, at 2. This testimony, along with plaintiff's other evidence, shows inconsistencies and contradictions sufficient to raise genuine questions about defendants' proffered reasons for plaintiff's termination. Therefore, the Court denies defendants' motion for summary judgment on plaintiff's claim of retaliatory discharge under Title VII.

"[R]etaliation claims under the NYSHRL are generally governed by the same standards as federal claims under Title VII." *Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 609-10 (2d Cir. 2006). Thus, the Court need not separately address plaintiff's state law retaliation claims. The retaliation provisions of the NYCHRL are broadly interpreted under the Restoration Act: "no challenged conduct may be deemed nonretaliatory unless a jury could *not* reasonably conclude from the evidence that such conduct was reasonably likely to deter a person from engaging in protected activity." *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 112 (2d Cir. 2013) (emphasis added). Since the Court finds questions of fact sufficient to defeat summary judgment for plaintiff's

Title VII and NYSHRL claims, the Court need not separately address plaintiff's NYCHRL

retaliation claims. All three claims for retaliatory discharge survive summary judgment.

### ii. Working "On Permit"

As discussed in Section III.b.ii., *supra*, plaintiff has not offered sufficient evidence to show

that she was qualified to work on permit as an LPN because she admits she never applied for such a

permit, as required by state law. *See* July Deposition, Dkt. No. 127-2, at 4-5; N.Y. Educ. Law § 6907.

Given this failure, the Court finds that Isabella's denying plaintiff the opportunity to work on permit

cannot qualify as an adverse employment action under either the NYSHRL or the NYCHRL. Thus,

she does not carry even the minimal burden to make out a *prima facie* case that this denial was

retaliatory, and defendants' motion for summary judgment on that claim is granted.

### d. Hostile Work Environment Claim

In order to establish that she was subjected to a hostile work environment, plaintiff must

show that her "'workplace [was] permeated with discriminatory intimidation, ridicule, and insult[ ]

that [was] sufficiently severe or pervasive to alter the conditions of [her] employment and create an

abusive working environment.'" *McGullam v. Cedar Graphics, Inc.*, 609 F.3d 70, 79 (2d Cir. 2010)

(quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). This requires her to show that: (a) the

"misconduct [was] severe or pervasive enough to create an *objectively* hostile or abusive work

environment"; and (b) she "*subjectively* perceive[d] that environment to be abusive." *Id.* (citations

omitted). Plaintiff must also show that "the alleged hostility [was] generated on the basis of a

protected characteristic." *Mills v. S. Connecticut State Univ.*, No. 3:08-cv-1270 (VLB), 2011 WL

3490027, at *12 (D. Conn. Aug. 10, 2011) *aff'd*, 519 F. App'x 73 (2d Cir. 2013).

Analyzing a hostile work environment claim requires considering "the totality of the

circumstances, including 'the frequency of the discriminatory conduct; its severity; whether it is

physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably

interferes with an employee's work performance.'" *McGullam*, 609 F.3d at 79 (quoting *Harris,* 510 U.S. at 23). Conduct falling outside the statute of limitations may be part of this consideration. *See Morgan*, 536 U.S. at 113 (employee may "us[e] the prior acts as background evidence in support of a timely claim"); *Fitzgerald v. Henderson*, 251 F.3d 345, 365 (2d Cir. 2001) ("A statute of limitations does not operate to bar the introduction of evidence that predates the commencement of the limitations period but that is relevant to events during the period."). However, plaintiff must show that at an act contributing to a hostile work environment occurred within the statute of limitations period, and that act must be "of sufficient severity to support a hostile work environment claim" on its own. *McGullam v. Cedar Graphics, Inc.*, 609 F.3d 70, 79 (2d Cir. 2010).

Here, plaintiff has alleged that Ms. Paul, Isabella's Director of Nursing, began mistreating her in 2005, *see* July Deposition, Dkt. No. 127-2, at 2-3, and she said in her deposition that this conduct "never really 100 percent stopped." August Deposition, Dkt. No. 127-3, at 27. It is a close call, but at the summary judgment stage the Court is required to "draw all permissible factual inferences" in plaintiff's favor. *See Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012). Therefore, on the totality of the record presented at summary judgment, including, but not limited to, the statements referenced above, the Court finds her hostile work environment claims are not time barred. However, for purposes of trial, and to defeat a possible Rule 50 motion, plaintiff must present evidence of an incident of sufficient severity within the relevant time period in order to sustain her hostile work environment claim. *See McGullam*, 609 F.3d at 79.

Plaintiff alleges that Ms. Paul, Isabella's Director of Nursing, treated her poorly as compared to nurses of Indian descent. *See* July Deposition, Dkt. No. 127-2, at 3, 16-17. Plaintiff testified that Ms. Paul "mistreat[ed]" her and made her life a "nightmare." *Id.* at 2-3. According to plaintiff, Ms. Paul's conduct included:

> frequent and unjustified verbal reprimands, confining [plaintiff] to the
> most difficult assignments, refusing to allow [plaintiff] to use vacation

> days to accommodate [her] class schedule, continually assigning [plaintiff] to different floors, having other nurses single [plaintiff] out by checking over every detail of her work, chastising [her] if [she] was one minute late back from lunch, refusing to meet with [her] when [she] had issues to discuss, making continual inappropriate inquiries into [plaintiff's] personal life and relationships, and warning [her] that any further complaints against other employees would jeopardize [her] job.

October Affidavit, Dkt. No. 127-5, at 2. Plaintiff claims this treatment was generated both on the basis of her race and ethnic background, and as retaliation for her complaints of sexual harassment.

Hostile work environment claims must be based on treatment "generated on the basis of a protected characteristic." *Mills*, 2011 WL 3490027, at *12. Retaliation claims must be based on an adverse employment action. *See Zann Kwan*, 737 F.3d at 844. Thus, in this case, the ill treatment forming the basis of plaintiff's hostile work environment claim must be generated by discrimination on the basis of her race or ethnicity, rather than retaliation. Drawing all permissible factual inferences in plaintiff's favor, *see Johnson*, 680 F.3d at 236, plaintiff has raised questions about the severity and pervasiveness of Ms. Paul's conduct, as well as about the motivation for this conduct. For example, plaintiff received a warning notice from Isabella in 2009 for lifting a patient by herself, rather than with two people, as was required for that patient. *See* July Deposition, Dkt. No. 127-2, at 13. Plaintiff testified that she did not know the patient was designated a "two-people transfer" because Ms. Paul was constantly changing plaintiff's assigned floor and the nurses of Indian descent would not properly explain plaintiff's assignments to her. *Id.* In another 2009 incident, plaintiff testified that Ms. Paul showed plaintiff her passing LPN exam, crossed out plaintiff's passing score, wrote in a failing score, then changed it to the minimum score needed to pass, scaring plaintiff and threatening to demote her back to a CNA if she caused any trouble. *Id.* at 15. The Court finds that these incidents, among others, raise questions sufficient to defeat summary judgment on plaintiff's Title VII hostile work environment claim.

Plaintiff's NYSHRL hostile work environment claim is subject to the same standard as her Title VII claims. *See Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007). The Court therefore denies defendants' motion for summary judgment as to that claim. Under the NYCHRL, plaintiff is not required to show severity and pervasiveness to establish a hostile work environment; she need "only show differential treatment—that she [was] treated 'less well'—because of a discriminatory intent." *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 110 (2d Cir. 2013). Because this is a lower threshold than is required to defeat summary judgment for Title VII and NYSHRL claims, the Court denies defendants' motion for summary judgment as to plaintiff's NYCHRL claim as well.

### e. Individual Liability

"Employers, not individuals, are liable under Title VII." *Reynolds v. Barrett*, 685 F.3d 193, 202 (2d Cir. 2012) (citing *Patterson v. County of Oneida,* 375 F.3d 206, 226 (2d Cir. 2004)). The Court thus grants defendants' motion for summary judgment as to all Title VII claims against the individual defendants.

Under the NYSHRL, "[a] supervisor is an employer for purposes of establishing liability under the NYSHRL if that supervisor actually participates in the conduct giving rise to the discrimination." *Feingold v. New York*, 366 F.3d 138, 157-58 (2d Cir. 2004) (citations and internal alterations omitted). Given the NYSHLR claims that remain to be tried, plaintiff has presented sufficient evidence to create a genuine question of the individual defendants' participation only as to Ms. Paul, and only with regard to plaintiff's hostile work environment claim. The Court grants defendants' motion for summary judgment as to all NYSHLR claims against the other individual defendants, and as to all NYSHRL claims except the claim for a hostile work environment against Ms. Paul.

"[A]n employer *or an employee or agent thereof*," may be held liable under the NYCHRL, but "only where they act with or on behalf of the employer in hiring, firing, paying, or in administering

the 'terms, conditions or privileges of employment'—in other words, in some agency or supervisory capacity." *Priore v. New York Yankees*, 307 A.D.2d 67, 74 (N.Y. App. Div. 2003) (emphasis in original).  Given this, the Court similarly finds that plaintiff has presented sufficient evidence to create a genuine question of the individual defendants' participation only as to Ms. Paul, and only with regard to plaintiff's hostile work environment claim.  The Court grants defendants' motion for summary judgment as to all NYCHRL claims against the other individual defendants, and as to all NYCHRL claims except the claim for a hostile work environment against Ms. Paul.

> **f.   42 U.S.C. § 1985 and 1986 Claims**

It has been firmly established for decades that claims under 42 U.S.C. § 1985 cannot be premised on a Title VII claim.  In 1979, the Supreme Court held that:  "Unimpaired effectiveness can be given to the plan put together by Congress in Title VII only by holding that deprivation of a right created by Title VII cannot be the basis for a cause of action under § 1985(3)."  *Great Am. Fed. Sav. & Loan Ass'n v. Novotny*, 442 U.S. 366, 378 (1979).  Because a 42 U.S.C. § 1986 claim requires success on the merits of a § 1985 claim, it cannot be premised on a Title VII claim either.  *See, e.g.*, *Cameron v. Church*, 253 F.Supp.2d 611, 623-24 (S.D.N.Y. 2003); *Katz v. Morgenthau*, 709 F.Supp. 1219, 1236 (S.D.N.Y.), *aff'd in part and rev'd in part on other grounds*, 892 F.2d 20 (2d Cir. 1989).  The Court grants defendants' motion for summary judgment on both claims.

> **g.   Other State Law Claims**

Plaintiff's opposition papers fail to address any of her additional state law claims.  Courts in this circuit have found such a failure to respond is sufficient to entitle defendants to summary judgment on the unaddressed claims.  *See, e.g.*, *Monachino v. Bair*, 769 F. Supp. 2d 431, 438-39 (S.D.N.Y. 2011) *aff'd*, 481 F. App'x 20 (2d Cir. 2012) (collecting cases).  For the reasons that follow, defendants are entitled to summary judgment even on the merits of plaintiff's remaining state law claims.

To prove tortious interference with business relations in New York, plaintiff must show: "(1) the plaintiff had business relations with a third party; (2) the defendant interfered with those business relations; (3) the defendant acted for a wrongful purpose or used dishonest, unfair, or improper means; and (4) the defendant's acts injured the relationship." *Catskill Dev., L.L.C. v. Park Place Entm't Corp.*, 547 F.3d 115, 132 (2d Cir. 2008). Such a claim is "very difficult to sustain"; "mere suspicions are inadequate." *Emamian v. Rockefeller Univ.*, No. 07-cv-3919 (DAB), 2008 WL 4443824, at *7 (S.D.N.Y. Sept. 25, 2008). Plaintiff appears to rely on her testimony about her difficulties finding a job after she was fired from Isabella to support this claim. That testimony does not show a business relationship with a third party, nor anything beyond speculation that at some unidentified time, some unidentified person at Isabella gave plaintiff a bad reference for some unidentified job. *See* July Deposition, Dkt. No. 127-1, at 15-16. Defendants are entitled to summary judgment on plaintiff's claim for tortious interference with business relations.

Plaintiff's claims for assault, battery, intentional infliction of emotional distress, defamation, and slander are all subject to a one-year statute of limitations. N.Y. C.P.L.R. § 215(3). Thus, the only facts available to support these claims relate to plaintiff's termination and subsequent events. Accordingly, her claims for assault and battery against Mr. Kochuplamootil and Mr. Santiago are time barred.

To prove defamation, including slander, in New York, plaintiff must show: "a false statement, published without privilege or authorization to a third party, constituting fault as judged by, at a minimum, a negligence standard, and it must either cause special harm or constitute defamation *per se*." *Konig v. CSC Holdings, LLC*, 112 A.D.3d 934, 935 (N.Y. App. Div. 2013). The speculative testimony about a possible bad employment reference can no more sustain a case for defamation or slander than it can for tortious interference with business relations. Defendants are entitled to summary judgment on plaintiff's claims for defamation and slander.

To prove intentional infliction of emotional distress in New York, plaintiff must show: "(i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress." *Howell v. New York Post Co.*, 81 N.Y.2d 115, 121 (1993). Plaintiff brings no evidence that her firing was even unusual, never mind extreme and outrageous. Neither does she bring evidence that she suffered severe emotional distress. Defendants are entitled to summary judgment on plaintiff's claim for intentional infliction of emotional distress.

Claims for negligent hiring, supervision, and retention of employees are subject to a three-year statute of limitations in New York, N.Y.C.P.L.R. § 214(5), thus the only facts available to support these claims relate to Mr. Santiago's alleged conduct. To prove negligent supervision or retention in New York, in addition to the standard elements of negligence, plaintiff must show: "(1) that the tort-feasor and the defendant were in an employee-employer relationship; (2) that the employer knew or should have known of the employee's propensity for the conduct which caused the injury prior to the injury's occurrence; and (3) that the tort was committed on the employer's premises or with the employer's chattels." *Ehrens v. Lutheran Church*, 385 F.3d 232, 235 (2d Cir. 2004) (citations omitted). The key here is the second element—the knowledge requirement, which courts consistently find to be essential in making out a case for negligent hiring, supervision, or retention. *See, e.g., Saldana v. Vill. of Port Chester*, No. 09-cv-6268 (SCR) (GAY), 2010 WL 6117083, at *5 (S.D.N.Y. July 21, 2010) *report and recommendation adopted*, No. 09-cv-6268 (RO), 2011 WL 940206 (S.D.N.Y. Mar. 16, 2011); *Cruz v. New York*, No. 13-cv-6131 (EAW), 2014 WL 2547516, at *11 (W.D.N.Y. June 6, 2014); *Sheila C. v. Povich*, 11 A.D.3d 120, 129-30 (N.Y. App. Div. 2004). Plaintiff offers no evidence that Mr. Santiago *had* a history of or propensity for the type of conduct of which she accuses him, never mind that defendants were aware of such a history or propensity, thus she

cannot make out a case for negligent hiring, supervision, or retention and defendants are entitled to summary judgment on these claims.

Finally, plaintiff's breach of contract claim fails.  In New York, employees are presumed to be at will unless they have a contract for a specific term.  *See, e.g.*, *Miller v. Huntington Hosp.*, 15 A.D.3d 548, 549, 792 N.Y.S.2d 88 (App. Div. 2005).  Employees may rely on an employee handbook as such a contract only if it includes "an express written policy limiting the right of discharge and the employee detrimentally relied on that policy in accepting employment."  *Lobosco v. New York Tel. Co./NYNEX*, 96 N.Y.2d 312, 316 (2001).  Isabella's handbook contains no such policy, and in fact contains an express policy to the contrary:

> Neither this handbook nor any other Isabella document confers any contractual right, either express or implied. Nor does it guarantee any fixed terms and conditions of your employment. Your employment at Isabella is for an indefinite period of time. You may resign for any reason at any time and you may be terminated at any time.

Dkt No. 119-3, at 86.

Perhaps plaintiff is attempting to rely on another provision of the Isabella handbook, which states that "[w]here there is a conflict between anything contained in the handbook and the collective bargaining agreement, the collective bargaining agreement will govern for those employees it covers."  Dkt No. 119-3, at 86.  To the extent this claim is premised on plaintiff's collective bargaining agreement, such claims are preempted by federal law—specifically Section 301 of the Labor Management Relations Act.  *See Avedisian v. Quinnipiac Univ.*, 387 F. App'x 59, 62 (2d Cir. 2010) (citing *Vera v. Saks & Co.*, 335 F.3d 109, 114 (2d Cir. 2003)).

But defendants would be entitled to summary judgment even if the Court were to construe plaintiff's claim as falling under Section 301 and consider it on the merits.  Plaintiff cites to a section of her collective bargaining agreement regarding layoffs, which provides that:  "Effective May 1, 2008, all regular full-time and part-time Employees who as of January 1, 2005 completed twenty-

four (24) months of membership in an 1199 bargaining unit at their Employer, shall not be laid-off during the term of this Agreement." Dkt. No. 130-1, at 2.  However, there is another section of the collective bargaining agreement governing discharge, which states:  "The Employer shall have the right to discharge, suspend or discipline any Employee for cause." Dkt. No. 119-3, at 79.  Because Isabella terminated plaintiff for cause, the latter provision applies.  Defendants are entitled to summary judgment on plaintiff's breach of contract claim.

## IV.    CONCLUSION

Defendants' motion for summary judgment is granted as to claims seven through seventeen in their entirely; claims one, three, and five, except as they relate to a hostile work environment; and claims two, four, and six, except as they relate to plaintiff's termination.  Defendants' motion is denied as to claims two, four, and six for retaliatory discharge against Isabella only, and claims one, three, and five for hostile work environment against Ms. Paul and Isabella only.

The Clerk of Court is directed to terminate the motion pending at docket number 116.

SO ORDERED.

Dated: December 12, 2014
New York, New York                          _____
                                                          GREGORY H. WOODS
                                                     United States District Judge

24